OPINION Goeke, Judge: Michael Winter owned stock in the sub-chapter S bank where he worked. The bank paid him a large bonus in 2002 but then fired him and demanded part of the bonus back in 2003. On his 2002 Federal income tax return Winter reported the full amount of his bonus and his share of the bank’s income and deductions — not as those items were reported by the bank but from his own estimates of what they were. The parties have argued mostly about the consequences of Winter’s failure to report his income from the bank in a manner consistent with the bank’s reporting on its return and about the taxability of his bonus in the year he received it. We ourselves question whether we have jurisdiction over these issues because the Internal Revenue Code provides that adjustments arising from inconsistencies between the return of a taxpayer and that of an S corporation in which the taxpayer has an ownership interest should be treated as math errors. The parties tell us that this has no effect on our jurisdiction. This Court agrees with the parties. Background Builders Bank (Builders), a corporation wholly owned by Builders Financial Corp. (BFC), hired Winter in 2001 to be its chairman and CEO and granted him a large number of stock options. Winter exercised these options, and by 2002 he owned over 26 percent of BFC. Builders also paid Winter a $5 million bonus that was repayable in part if he quit or were fired for cause. BFC was an S corporation. Within a year Builders grew dissatisfied with Winter. It fired him on December 26, 2002, and claimed the firing was a termination for cause. In early 2003 it demanded repayment of the unearned portion of the bonus, which by that time was a bit more than $4 million. Winter refused to pay, and he and Builders took their dispute to State court, where Winter argued that Builders had no cause to fire him. The case seems to have been settled, because it was dismissed in January 2004 without opinion. But before then, in 2003, Winter needed to figure out how much income he had and how to report it on his 2002 income tax return. S corporations[1] are required to send their shareholders Schedules K-l, Shareholder’s Share of Income, Credits, Deductions, etc., listing the amounts of passthrough income or loss they should report on their individual income tax returns. On its 2002 tax return[2] BFC deducted about $1 million of Winter’s bonus payment as a salary expense. BFC split the remaining $4 million — reporting $2 million as prepaid compensation and reducing retained earnings by the same amount, neither of which it deducted against income for 2002. BFC included a copy of each shareholder’s Schedule K-1 in the 2002 return that it filed, including one for Winter that showed $820,031 in ordinary passthrough income and $5,062 as his share of BFC’s charitable contributions. The Internal Revenue Service (IRS) later audited BFC’s return but ended up accepting it as filed. S corporation shareholders usually report their shares of the corporation’s items the same way those items are reported on the Schedules K-l, if only because they know S corporations send the information to the IRS. But Winter broke this pattern. Instead of using the information on the Schedule K-l, he looked up BFC’s regulatory financial statements on the FDic Web site, took the net loss reported there, and multiplied it by his percentage ownership at the end of 2001. (Winter owned 26.82 percent of BFC at the end of 2001 and claims he was unaware of an equity distribution that left him with only 26.32 percent at the end of 2002.) This calculation would probably work if BFC treated each item identically for both tax and regulatory reporting purposes. But BFC’s 2002 regulatory statements showed a charge against earnings for the entire bonus paid to Winter, in contrast to its 2002 tax return on which it claimed a deduction for just one-fifth. Winter’s calculations — based on the regulatory report — therefore showed a total 2002 passthrough loss of about $1.2 million and not the passthrough income of about $820,000 that BFC had reported on Winter’s Schedule K-l. Winter also failed to claim his share of BFC’s charitable contributions reported on its tax return. Winter’s excuse for this deviation from normal reporting procedures was that he never received a Schedule K-l. The record shows, however, that Builders sent an overnight package via FedEx to Winter on March 13, 2003. Builders claims that the package held a cover letter and Winter’s 2002 Schedule K-l. Winter claims that he never got the package. We find that Builders used the correct name, street address, State, and ZIP Code but listed the wrong Chicago suburb (Highland Park instead of Deerfield) on the mailing label. There was another Michael Winter who lived in Highland Park, but his house number, street name, and ZIP Code were all different. The parties offer no evidence that this other Michael Winter received the package; and though FedEx did not obtain a signature, Builders did receive confirmation of delivery on March 14, 2003. Winter also never asked Builders or the IRS for another copy of the Schedule K-l. On February 24, 2006, respondent issued Winter a notice of deficiency, including respondent’s determination that Winter should have reported BFC income consistent with the income shown on the Schedule K-l. After the issuance of the notice of deficiency, respondent summarily assessed the amount of tax based upon the reporting inconsistent with the Schedule K-l. Winter was a resident of Illinois when he timely filed his petition, and he petitioned the Schedule K-l disputed amount as well as other issues. Trial was set to begin in Chicago when the parties agreed to submit the case for decision under Rule 122 on March 13, 2006. In the course of drafting the Opinion, the Court identified a possible jurisdictional problem and asked the parties for their views. We therefore decide whether we have jurisdiction before addressing the substantive issues in a subsequent opinion. Discussion The issue is whether this Court has jurisdiction over the adjustment to Winter’s distributive share of S corporation income or whether respondent must assess the tax related to the adjustment as a math error under section 6213(b)(1), precluding the inclusion in the notice of deficiency of the increase in tax relating to that adjustment. The parties argue that the examination for petitioners’ 2002 tax year determined there was a deficiency, as defined in section 6211(a), and that a notice of deficiency was therefore a proper way for the IRS to provide petitioners with respondent’s determination. The concern regarding our jurisdiction arises because Winter failed to comply with section 6037(c) by either reporting consistently with the Schedule K-l as required by section 6037(c)(1) or notifying the IRS of the possibility of an inconsistency as required by section 6037(c)(2)(A). Section 6037(c)(3) provides potential consequences of Winter’s failure to comply: (3) Effect of failure to notify. * * * any adjustment required to make the treatment of the items by such shareholder consistent with the treatment of the items on the corporate return shall be treated as arising out of mathematical or clerical errors and assessed according to section 6213(b)(1). Paragraph (2) of section 6213(b) shall not apply to any assessment referred to in the preceding sentence. Section 6213(b)(1) provides: SEC. 6213(b). Exceptions to Restrictions on Assessment.— (1) Assessments arising out of mathematical or clerical ERRORS. — If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due * * * such notice shall not be considered as a notice of deficiency * * * and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited * * * Reading the two sections together, our colleague suggests that when a deficiency arises from an inconsistency between a shareholder’s return and his S corporation’s return and the shareholder fails to report it, the IRS must issue a math-error notice and use summary-assessment procedures. That is not what happened here in the first instance. Instead of summarily assessing the tax arising from the inconsistent reporting and issuing a notice of deficiency for the rest, respondent originally issued a single notice of deficiency for both the increase in tax due to inconsistent reporting and the much smaller increase in tax due to Winter’s failure to report income listed on some Forms 1099. Winter’s petition disputes the entire amount of the deficiency, and respondent summarily assessed the tax caused by the inconsistent reporting only after the jurisdiction issue was raised in this docketed case. This raises the question whether the failure of the IRS to summarily assess before the issuance of the notice of deficiency precludes our jurisdiction on the issue of the correct income from the S corporation. The parties agree with each other that we have jurisdiction over all issues and make four points. First, they say that section 6037 lets the Commissioner choose either to issue a notice of deficiency or to summarily assess. They also both argue more generally that because the notice of deficiency in this case undoubtedly gives us jurisdiction over some issues, it also gives us jurisdiction over all the other issues needed to redetermine Winter’s entire 2002 tax liability, including the portion resulting from his inconsistent reporting. Respondent also argues that the principles of res judicata and judicial economy also suffice to give us jurisdiction. The more direct answer to this jurisdiction issue is found in the definition of “deficiency”. Section 6211(a) defines “deficiency” as the amount by which the correct tax imposed by the Code exceeds the amount of tax shown on the return plus the amount of tax previously assessed less any rebates. Here a notice of deficiency was issued. This is the traditional “ticket to the Tax Court” under section 6213(a). Robinson v. United States, 920 F.2d 1157, 1158 (3d Cir. 1990). The amount of tax resulting from the inconsistent treatment was included in the calculation of the deficiency, and the merits of this tax liability are before us by the parties’ pleadings. Section 6212 authorizes the mailing of a notice of deficiency and contains no restrictions prohibiting the inclusion of mathematical or clerical adjustments. Section 6213 gives the Tax Court jurisdiction to redetermine a deficiency when a petition is filed timely in response to a notice of deficiency. Such jurisdiction does not depend on whether the Commissioner’s determination in the notice of deficiency is correct as “it is not the existence of a deficiency but the Commissioner’s determination of a deficiency that provides a predicate for Tax Court jurisdiction.” Hannan v. Commissioner, 52 T.C. 787, 791 (1969). Once we have jurisdiction, it generally covers all items necessary to determine the correct tax.[3] Section 6214(a) gives the Tax Court jurisdiction to “redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount * * * [in the notice]”. Thus, even if the Schedule K-l adjustment had not been in the notice of deficiency, section 6214 allows respondent to ask for an increased deficiency based on the Schedule K-l adjustment. Section 6512(b) provides the Tax Court with jurisdiction to determine overpayments. Estate of Baumgardner v. Commissioner, 85 T.C. 445, 449 (1985). Petitioners are claiming an overpayment. Amended Pet. par. 5d and e. In order to determine whether there is an overpayment, the Court must determine the correct tax that should have been paid. The correct tax for determining overpayments even includes unassessed tax, the assessment of which is barred by the statute of limitations. Bachner v. Commissioner, 109 T.C. 125 (1997), affd. without published opinion 172 F.3d 859 (3d Cir. 1998). These jurisdictional provisions of section 6512 provide the Tax Court with authority to decide all issues necessary to determine the correct amount of income tax for the taxable year in issue. Even if respondent made the adjustment based on the Schedule K-l as a mathematical adjustment, as has now been done, the correctness of the adjustment can still be placed in issue, as can any other previously assessed tax in order to determine the correct amount of the deficiency or overpayment.[4] As stated in Russell v. United States, 592 F.2d 1069, 1072 (9th Cir. 1979): There can be no question that when the taxpayer petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question. A party cannot, in such a case, by failing to raise an issue, or by asking the court not to consider it, escape the Res judicata effect of the decision. This is hornbook law. Our colleague emphasizes that section 6037(c)(3) mandates that an adjustment thereunder “shall be * * * assessed according to section 6213(b)(1).” (Emphasis added.) We note, however, that even if this provision requires the IRS to make summary assessment, the IRS complied with this provision when it, timely, summarily assessed the tax after the notice of deficiency was issued and the petition was filed. Section 6037(c) does not contain any “express restrictions” on our “jurisdiction”. Section 6037 does not even mention the Tax Court or its jurisdiction. Rather, to read section 6037 as denying our jurisdiction requires inferences that we abandon the literal language of the jurisdictional provisions of the Code and the established caselaw regarding the scope of our jurisdiction. Section 6037 is unlike the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, which specifically provide a parallel scheme of jurisdiction in this Court for partnership cases. Sec. 6226. Congress originally included S corporations in the TEFRA unified audit procedures but eliminated them in 1996 in adopting section 6037(c) in the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1307(c), 110 Stat. 1781. Congress specifically determined S corporations should not be treated the same as partnerships in adding section 6037(c).[5] It is inconsistent with this legislative history to assume that Congress intended to eliminate S corporation items from the deficiency jurisdiction of this Court involving individual shareholders, because there is no provision for a separate judicial determination of the inconsistently reported item in the case of an S corporation. Thus, there is no necessity to defer the individual case for an action at the level of the corporation. As noted previously, respondent assessed the tax arising from the inconsistent reporting of the S corporation income after the Court raised this issue and respondent suspended collecting the assessment pending resolution of the jurisdiction issue. If there is any question whether respondent must summarily assess to raise the inconsistency issue, it is not before us, and we leave that question for future cases. In conclusion, we have jurisdiction over all of the issues in this case. An appropriate order will be issued. Reviewed by the Court. Colvin, Wells, Gale, Thornton, Marvel, Wherry, Kroupa, GustaFSOn, Paris, and Morrison, JJ., agree with this majority opinion. If a business meets the requirements of sec. 1361, it may elect to become an “S corporation” and pay no corporate tax. An S corporation’s income and losses, like a partnership’s, flow through to its shareholders, who then pay income tax. All section references in this Opinion are to the Internal Revenue Code in effect for the year at issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. Builders and BFC filed consolidated Federal and State income tax returns and consolidated regulatory and financial statements. Under sec. 1361(b)(3) in certain circumstances an S corporation that wholly owns another company may elect to combine assets, liabilities, income, deductions, and credits for Federal income tax purposes. Neither party raises any question about the validity of the notice of deficiency. 4 Sec. 6211(a) defines “deficiency” without tying it to the date of the notice of deficiency or any other particular date. Consequently, when the Tax Court pursuant to sec. 6214(a) redetermines the “correct amount of the deficiency”, we apply sec. 6211(a) as of the date of our decision and compute the deficiency taking into account any amount assessed “previously”; i.e., before the decision. After all, the effect of our decision is to allow the IRS to assess the deficiency. H. Conf. Rept. 104-737, at 223 (1996), 1996-3 C.B. 741, 963, states: Present law In addition, the audit procedures adopted by the Tax Equity and Fiscal Responsibility Act of 1982 (“TEFRA”) with respect to partnerships also apply to S corporations. Thus, the tax treatment of items is determined at the corporate, rather than individual level. House bill * * * * * * * In addition, the House bill repeals the TEFRA audit provisions applicable to S corporations and would provide other rules to require consistency between the returns of the S corporation and its shareholders. And while we have held that “it is not the existence of a deficiency but the Commissioner’s determination of a deficiency that provides a predicate for Tax Court jurisdiction,” Hannan v. Commissioner, 52 T.C. 787, 791 (1969), the issue here is whether the Commissioner had the power to determine a deficiency that included adjustments to make Winter’s return consistent with BFC’s. “While a deficiency notice is a necessary requisite to the commencement of a case in this Court, this simply is a procedural precondition and in no way operates to confer jurisdiction upon us over substantive issues.” Bradley v. Commissioner, 100 T.C. 367, 371 (1993).